## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| **JANE DOE** <br> c/o McGillivary Steele Elkin LLP <br> 1101 Vermont Ave, NW, Suite 1000 <br> Washington, DC 20005 <br><br> Plaintiff. <br><br> v. <br><br> **MONTGOMERY COUNTY BOARD OF EDUCATION** <br> 850 Hungerford Drive <br> Rockville, MD 20850 <br><br> Serve on: <br> Karla Silvestre, President <br> 850 Hungerford Drive <br> Rockville, MD 20850 <br><br> Defendant. | ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ <br> ❖ | C-15-CV-24-004455 <br><br> Case No: _____ |

## COMPLAINT

Plaintiff Jane Doe, by and through her counsel, the law firm of McGillivary Steele Elkin LLP, for her Complaint against the Montgomery Board of Education, claims damages, demands judgment, and states for cause the following:

### INTRODUCTION

1.  Plaintiff brings this civil rights action against Montgomery County Public Schools and/or Montgomery County Board of Education (collectively Defendant) for the harassment and hostile work environment she suffered on the basis of her sex and gender, and for the retaliation she faced when opposing the harassment, in violation of state and federal law.

2.  Federal and state law prohibit harassment on the basis of sex and prohibit retaliation for opposing any unlawful act. Nonetheless, Plaintiff, a Paraeducator for Montgomery County

Public Schools, was forced to endure pervasive sexual harassment and a hostile work environment during her employment at Hallie Wells Middle School in Clarksburg, Maryland. These unlawful acts were willfully ignored and/or unaddressed by her employer. Plaintiff was then retaliated against by her employer for reporting the sexual harassment.

3. As a result of the harassment and retaliation Plaintiff experienced in her place of employment, Plaintiff has suffered emotional distress, humiliation, embarrassment, stigmatization, and loss of dignity at the hands of Defendant, as well as a loss of her position as a Paraeducator.

4. Accordingly, Plaintiff brings this action against Defendant in order to remedy the harms they caused her.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the subject matter and all parties pursuant to Md. Code §§ 6- 102 to 1-3 of the Courts and Judicial Proceedings Article (Cts. & Jud. Proc.).

6. Pursuant to Md. Code, Cts. & Jud. Proc. § 6-201, venue in Montgomery County, Maryland is proper because all material events occurred in Montgomery County.

## PARTIES

7. Plaintiff is a resident of Federick County, Maryland. At all times relevant, she was employed as a Paraeducator by Montgomery County Public Schools at Hallie Wells Middle School.

8. Defendant Montgomery County Board of Education constitutes the governing body for the Montgomery County Public Schools system (MCPS). The Board's principal office is located at 860 Hungerford Drive, Rockville, MD 20859. The Board is a corporate body created under Md. Code, § 3-103 of the Education Article.

## ADMINISTRATIVE EXHAUSTION

9. On June 24, 2024, pursuant to Md. Code, Cts. & Jud. Proc., § 5-304, Plaintiff served timely Notice of Claim on Karla Silvestre, President of the Montgomery County Board of Education and Marc B. Elrich, County Executive for Montgomery County, providing notice of her claims arising out of the hostile work environment and retaliation she faced.

10. On December 18, 2023, Plaintiff filed a timely Charge of Discrimination with the Maryland Commission on Civil Rights which was cross-filed with the EEOC and transferred for investigation to the EEOC.

11. On August 8, 2024, Plaintiff received a Notice of Right to sue. This action is timely commenced within 90 days of Plaintiff's receipt of the Notice.

## FACTS

12. Plaintiff was employed as a Paraeducator at Hallie Wells Middle School in Montgomery County.

13. Beginning in January of 2023, Plaintiff was sexually harassed by fellow Paraeducator Mr. Damien Murray.

14. For example, in January of 2023, Plaintiff was wearing leggings and sitting in the break room eating lunch. Mr. Murray asked her to uncross her legs so he could "see the outline."

15. Later, Mr. Murray apologized for the comment about the leggings, saying that he just "can't help himself" around Plaintiff.

16. In February of 2023, Mr. Murray said that he was "unable to stand up without the pillow" after looking at Plaintiff. After Plaintiff did not respond, Mr. Murray asked her if she thought he was joking, and then he moved the pillow to show her that he was sexually aroused. He then asked Plaintiff to sit on his lap. Plaintiff did not respond and left the break room immediately.

17. Mr. Murray routinely made dirty and sexual looks at Plaintiff and said "god damn" when she walked down the hallway.

18. Additionally, in February of 2023, Mr. Murray made a sexual face at Plaintiff. When she told him to stop, and that she was a happily married Mr. Murray responded, "me too, I don't care."

19. Moreover, in the same month, Mr. Murray made an oral sex gesture (a "v" with his index finger and middle figure held up to his mouth, with his tongue sticking through) towards Plaintiff.

20. On Valentines Day, Plaintiff brought in lollipops for the students, and put the leftover ones in the employee lounge. Mr. Murray told her that he "wanted one that tasted like her" and gestured with the lollipop between his legs.

21. Not long after, Mr. Murray invited Plaintiff to his son's graduation party. After Plaintiff said she was busy and couldn't attend, he persisted and asked her to come. In an attempt to decline the invite, Plaintiff said that she did not think he would want her whole family there, implying that he should not have been inviting her alone, and that she would not have come alone. Mr. Murray then replied, "I don't even care that my wife is there," and then made a sexual face while biting his lip and gesturing.

22. On March 3, 2023, during a pep rally, Plaintiff was pulling a student for a "hungry-hungry-hippos game" (one student lays on a dolly holding a bucket, while another person holds their legs in the air and pushes and pull them around collecting plastic ball). Mr. Murray was watching and said to Plaintiff "you better promise me that one day I can hold you in that position." (laying on her stomach and with another person holding the legs from behind).

4

23. On April 13, 2023, Mr. Murray saw Plaintiff at the bottom of the stairs walking to the breakroom, said "god damn" and then proceeded to follow her into the breakroom even though she was clearly trying to walk away from him. He then asked her, in a whisper, if he could "touch it" (meaning her butt). Plaintiff quickly walked away through the break door after loudly saying "no."

24. On April 17 or 18, 2023, Mr. Murray said "I wanted to thank you for wearing that dress the other day [April 13]. I had a great time thinking about you last night in it." Another colleague, Mr. King, was present for and likely overheard this conversation.

25. On April 19, 2023, Mr. Murray left a note in Plaintiff's Chromebook saying "hi . . . guess who?? Hint-love the black dress." Another colleague saw Mr. Murray place the note.

26. On April 24, 2023, Mr. Murray asked Plaintiff if she received her "surprise." A coworker, Ms. Oldach, was present when Mr. Murray confronted Plaintiff about the "surprise."

27. On April 27, 2023, Mr. Murray twice asked Plaintiff if they could fuck while Plaintiff's daughter was nearby.

28. Because of this behavior, between January and April 2023, Plaintiff was forced to take great lengths to try and avoid Mr. Murray at school. She would hide in the bathrooms or stairwells if she saw him walking down the hallway.

29. Plaintiff did not feel safe working in the same school as Mr. Murray. Plaintiff also lost her sense of security when out near her house, as she was afraid to run into him.

30. As early as February of 2023, Plaintiff's supervisors knew about Mr. Murray's inappropriate behavior with Plaintiff and others. Indeed, the principal at the time, Dr. Woodward, had previously instructed Mr. Murray to keep his distance from another Paraeducator. When Mr.

Murray was present in the breakroom with this Paraeducator, Plaintiff told him he was not supposed to be there. Mr. Murray responded, "I just want it to be you."

31. Even after that warning, the administration at Hallie Wells Middle School failed to take any action against Mr. Murray, despite being aware of his behavior.

32. On April 27, 2023, Plaintiff reported the sexual harassment to Tara Kelly, an Assistant Administrator.

33. On April 28, 2023, Plaintiff filed a formal complaint with William Currence, the Principal at Hallie Wells.

34. Because Plaintiff did not feel safe working with Mr. Murray, she went out on leave after she filed the complaint.

35. The Department of Compliance and Investigations (DCI) then completed a cursory investigation of Plaintiff's complaint.

36. The DCI has a known history of mishandling complaints of employee conduct and failing to properly investigate reports of harassment.[1]

37. After only interviewing Plaintiff once, DCI then ignored Plaintiff and flatly refused to give her any update on the investigation for months, despite Plaintiff's multiple requests for information.

38. On June 12, 2023, Montgomery County Public Schools Compliance Coordinator, Khalid Walker, informed Plaintiff that the DCI found no evidence of sexual harassment, and that Mr. Murray would not be removed.

---

[1] Tracee Wilkins, *Inspector General Finds Issues With How MCPS Handles Complaints of Employee Misconduct* (Jan. 24, 2024), NBC Washington, https://www.nbcwashington.com/news/local/inspector-general-finds-issues-with-how-mcps-handles-complaints-of-employee-misconduct/3525289/; Alexandra Robbins & Nicole Asbury, *MCPS Investigator Who Closed Beidleman Inquiry is Twice Reassigned* (Oct. 7, 2023), Washington Post, https://www.washingtonpost.com/education/2023/10/07/khalid-walker-beidleman-mcps-job/.

39. Plaintiff could not safely return to Hallie Wells because Mr. Murray was not removed.

40. Therefore, she was forced to accept an assignment as an Office Secretary at Captain James Daly Elementary School on August 16, 2023. This was the only job she could find, and it was undesirable because it was not a Paraeducator position, which is was she was trained for and wished to do. Accepting this position also caused Plaintiff to lose the relationships she had built with her students.

41. Furthermore, Plaintiff's current position has a lower hourly rate of pay and requires Plaintiff to work more hours per day than she did as a Paraeducator.

## HARM TO PLAINTIFF

42. At consistent and multiple times during Plaintiff's employment, Plaintiff was harassed based on her sex. Then, because Plaintiff opposed the harassment, Defendant retaliated against Plaintiff by conducting a sham investigation and failing to remove Mr. Murray from the school. As a result of the harassment and retaliation, Plaintiff was not only forced to use leave, but also forced to transfer and accept an undesirable position.

43. Defendant's male employees were treated differently and were not subjected to a hostile work environment wherein incidents of harassment continually go unaddressed. As such, Defendant improperly denied equal terms, conditions, and privileges of employment to female employees, like Plaintiff, and violated Plaintiff's civil rights to be free from harassment and retaliation.

## COUNT I
## HARASSMENT IN VIOLATION OF THE MARYLAND FEPA

44. Plaintiff incorporates by reference the allegations set for the in paragraphs 1 through 40 of this Complaint.

45. The Maryland Fair Employment Practices Act (FEPA), State Govt., § 20-606(a)(5) makes it unlawful for an employer to engage in the harassment of an employee.

46. Harassment is defined as "unwelcome and offensive conduct, *which need not be severe or pervasive*" that is based on sex and based on the totality of circumstances, creates a hostile work environment. Md. Code, State Govt., § 20-601(h) (emphasis added).

47. While employed as Paraeducator at Hallie Wells Middle School, Plaintiff was subject to harassment based on her sex.

48. The harassment Plaintiff endured was unwelcome and offensive.

49. Due to the ongoing harassment, Plaintiff was treated less favorably than her male colleagues and was subjected to a hostile work environment.

50. Defendant was recklessly indifferent to the harassment and hostile work environment to which Plaintiff was subjected. Defendant had actual and constructive knowledge of the hostile work environment. Defendant, who had the ability to take action against Mr. Murray but refused to do so, perpetrated the harassing behavior.

51. Accordingly, Defendant violated Plaintiffs rights protected by the Maryland FEPA, Md. Code, State Govt., § 20-606(a)(5).

## COUNT II
## HARASSMENT IN VIOLATION OF TITLE VII

52. Plaintiff incorporates by reference the allegations set for the in paragraphs 1 through 48 of this Complaint.

53. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to engage in the harassment of an employee based on sex when it creates a hostile work environment. 42 U.S.C. § 2000e-2.

54. While employed as Paraeducator at Hallie Wells Middle School, Plaintiff was subject to harassment based on her sex.

55. The harassment Plaintiff endured was severe and pervasive.

56. Defendant was recklessly indifferent to the harassment and hostile work environment to which Plaintiff was subjected. Defendant had actual and constructive knowledge of the hostile work environment. Defendant, who had the ability to take action against Mr. Murray but refused to do so, perpetrated the harassing behavior.

57. Accordingly, Defendant violated Plaintiffs rights protected by Title VII, 42 U.S.C. § 2000e-2.

## COUNT III
## RETALIATION UNDER MARYLAND FEPA

58. Plaintiff incorporates by reference the allegations set for the in paragraphs 1 through 54 of this Complaint.

59. The Maryland FEPA makes it unlawful for an employer to retaliate against an employee for opposing any unlawful practice or making a charge or participating in any investigation of an unlawful practice. Md. Code, State Govt., §20-606(f).

60. Plaintiff engaged in protected activity by reported the sexual harassment she was facing. Because of this protected activity, Defendant retaliated against Plaintiff in a way that would dissuade a reasonable person from engaging in protected activity.

61. Defendant has retaliated against Plaintiff for the exercise of her rights under the law in violation of the Maryland FEPA. Specifically, Defendant retaliated against Plaintiff by conducting a sham investigation, refusing to remove or otherwise discipline the perpetrator, and effectively forcing Plaintiff to transfer to a lesser position.

62. As a direct and proximate cause of Defendant's actions, Plaintiff suffered emotional distress, lost leave, personal humiliation, the loss of a Paraeducator position, as well as other financial and adverse consequences for which Plaintiff seeks full damages and make whole relief.

63. Accordingly, Defendant violated Plaintiffs rights protected by the Maryland FEPA, Md. Code, State Govt., § 20-606(f).

## COUNT IV
## RETALIATION UNDER TITLE VII

64. Plaintiff incorporates by reference the allegations set for the in paragraphs 1 through 60 of this Complaint.

65. Title VII makes it unlawful for an employer to retaliate against an employee for opposing any unlawful practice or making a charge or participating in any investigation of an unlawful practice. 42 U.S.C. § 2000e-3(a).

66. Plaintiff engaged in protected activity by reporting the sexual harassment she was facing. Because she engaged in this protected activity, Defendant retaliated against Plaintiff in a way that would dissuade a reasonable person from engaging in protected activity.

67. Defendant has retaliated against Plaintiff for the exercise of her rights under the law in violation of Title VII of the Civil Rights Act of 1964. Specifically, Defendant retaliated against Plaintiff by conducting a sham investigation, refusing to remove or otherwise discipline the perpetrator, and effectively forcing Plaintiff to transfer to a lesser position.

68. As a direct and proximate cause of Defendant's actions, Plaintiff suffered emotional distress, lost leave, personal humiliation, the loss of a Paraeducator position, as well as other financial and adverse consequences for which Plaintiff seeks full damages and make whole relief.

69. Accordingly, Defendant violated Plaintiffs rights protected by Title VII, 42 U.S.C. § 2000e-3(a).

**JURY DEMAND**

70. Plaintiff demands a jury trial in this matter.

**WHEREFORE,** Plaintiff requests that the Court enter a judgment against Defendant as follows:

a) Enter a declaratory judgment declaring that Defendant wrongfully deprived Plaintiff of her rights, privileges, protections, compensation, and other benefits and entitlements under the law;

b) Award Plaintiff monetary damages against Defendant in an amount to be determined at trial, but the amount sought exceeds $75,000;

c) Award Plaintiffs her costs and expenses in this litigation;

d) Award punitive damages as allowed by law;

e) Award Plaintiff such other relief as the Court deems just and proper.

Date: August 14, 2024                    Respectfully submitted,

*/s/ Sara L. Faulman*
Sara L. Faulman
Attorney No: 2104190002
Megan Mechak
Attorney No: 0312170045
Rachel Lerner (*Pro Hac Vice Forthcoming*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C. 20005
(202) 833-8855
slf@mselaborlaw.com
mkm@mselaborlaw.com
rbl@mselaborlaw.com

*Counsel for Plaintiff*