IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE DOE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-2884 |
| MONTGOMERY COUNTY BOARD OF EDUCATION, | * | |
| | * | |
| Defendant. | | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Montgomery County Board of Education's (the "Board") Motion to Dismiss for Failure to State a Claim (ECF No. 11). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant in part and deny in the part the Motion.

## I.   BACKGROUND

## II.   Factual Background[1]

Plaintiff Jane Doe, a self-identified female, was employed by the Montgomery County Board of Education as a paraeducator at Hallie Wells Middle School in Clarksburg, Maryland. (Compl. ¶¶ 2, 12–13, ECF No. 6). She alleges that she was sexually harassed by a co-worker between January and April 2023, and was retaliated against when she opposed the harassment. (See id. ¶ 1).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 6) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Beginning in January 2023, Doe allegedly began experiencing sexual harassment by a fellow paraeducator, Damien Murray. (Id. ¶ 12). Doe alleges several specific incidents of harassment over the course of January, February, and April 2023. (See id. ¶¶ 14–27). Murray "routinely made dirty and sexual looks" at Doe. (Id. ¶ 17). Among other sexual comments, Murray expressly asked Plaintiff "if they could f[***] while Plaintiff's daughter was nearby." (Id. ¶ 27). Doe states that because of Murray's behavior, she "did not feel safe working in the same school as Mr. Murray," (id. ¶ 29), and "was forced to take great lengths to try and avoid Mr. Murray at school," (id. ¶ 28).

Doe also alleges that "[a]s early as February of 2023, Plaintiff's supervisors knew about Mr. Murray's inappropriate behavior with Plaintiff and others." (Id. ¶ 30). Dr. Woodward, a prior school principal, "had previously instructed Mr. Murray to keep his distance from another Paraeducator." (Id.). Doe observed Murray violating the instruction. (Id.). Even after this warning, Doe alleges that the administration "failed to take any action against Mr. Murray, despite being aware of his behavior." (Id. ¶ 31).

On April 27, 2023, Doe reported the harassment to Tara Kelly, an Assistant Administrator, (id. ¶ 32), and on April 28, 2023, Doe filed a formal complaint with the principal at the time, William Currence, (id. ¶ 33). Soon after, Doe, who "did not feel safe" working with Murray, went on leave. (Id. ¶ 34). Doe alleges that the Department of Compliance and Investigations ("DCI") conducted a "cursory investigation" of her complaint, (id. ¶ 35), but states that DCI has a "known history of mishandling complaints . . . and failing to properly investigate reports of harassment," (id. ¶ 36). Doe

2

states that DCI interviewed her only once, then did not give any updates on the investigation, despite her many requests for information. (Id. ¶ 37).

On June 12, 2023, Doe was informed that "DCI found no evidence of sexual harassment, and that Mr. Murray would not be removed." (Id. ¶ 38). Because she felt that she could not safely return to school with Murray, "she was forced to accept an assignment" as an office secretary at another school on August 16, 2023. (Id. ¶¶ 39–40). Doe states that this was the "only job she could find," "it was undesirable because it was not a Paraeducator position, which is [what] she was trained for and wished to do," and caused her to lose relationships with her students. (Id. ¶ 40). Further, the new position paid less per hour and required that she work more hours per day. (Id. ¶ 41).

**B.      Procedural History**

Doe filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on August 8, 2024. (Id. ¶¶ 10–11). On August 14, 2024, Doe filed a lawsuit in the Circuit Court for Montgomery County. (ECF No. 1-2). On October 4, 2024, the Board removed the case to this Court based on federal question jurisdiction. (See Notice Removal, ECF No. 1-1).

In her Complaint, Doe alleges: sexual harassment in violation of the Maryland Fair Employment Practices Act ("FEPA") and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I & II) which the Court construes under a hostile work environment framework; and retaliation under FEPA and Title VII (Counts III & IV). (See Compl. ¶¶ 44–69, ECF No. 6). Doe seeks a declaratory judgment that the Board "wrongfully deprived [her] of her rights, privileges, protections, compensation, and other benefits and

entitlements under the law;" compensatory and punitive damages; and attorney's fees and costs. (Id. ¶ 70).

The Board now moves to dismiss all counts against it for failure to state a claim upon which relief may be granted. (ECF Nos. 11, 12). Doe filed an Opposition on October 22, 2024. (ECF No. 14). The Board filed a Reply on November 5, 2024. (ECF No. 15).

### III.    DISCUSSION

**A.    Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

445, 449 (D.Md.) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Analysis**

The Board moves for dismissal on two grounds. First, the Board argues that Doe fails to plausibly allege the elements of each claim; specifically, that Doe failed to allege Murray's conduct was imputable to the Board, that she did not allege that she suffered an adverse employment action, and that she failed to allege that any adverse action was causally connected to her complaint of sexual harassment. Second, the Board argues that Doe is not entitled to punitive damages because it has not waived sovereign immunity for sovereign immunity claims.

1.  **Title VII and FEPA Sexual Harassment-Counts I and II[2]**

Doe alleges that she was sexually harassed by a co-worker between January and April 2023 which created a hostile work environment in violation of FEPA and Title VII. (Compl. ¶ 1). Title VII provides a cause of action for hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mustafa v. Iancu, 313 F.Supp.3d 684, 695 (E.D.Va. 2018) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (cleaned up). To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race [or gender]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)).

The Board challenges only the fourth element: that Doe failed to allege her abusive work environment is imputable to the Board. See Bazemore v. Best Buy, 957 F.3d 195,

---

[2] FEPA is the Maryland state analogue of Title VII and federal courts apply Title VII caselaw in adjudicating FEPA claims. Williams v. Silver Spring Volunteer Fire Dep't, 86 F.Supp.3d 398, 408 n.1 (D.Md. 2015) (citing Haas v. Lockheed Martin Corp., 914 A.2d 735, 742 (Md. 2007)). Accordingly, the Court's analysis of Doe's Title VII claim shall constitute its analysis of her FEPA claims. See id.

201 (4th Cir. 2020) ("[T]o survive a Rule 12(b)(6) motion to dismiss, an employee must allege sufficient facts to plausibly satisfy the imputability requirement."). When an employee is sexually harassed by her coworker, the alleged hostile work environment which results from that harassment is imputable to the employer only if the "employer knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." Id. at 203.

In support of her hostile work environment claims under Counts I and II, Doe alleges repeated instances where Murray made offensive comments and gestures to Doe based on her sex. (See Compl. ¶¶ 14–28). She claims that she "did not feel safe working in the same school as Mr. Murray" and that she "lost her sense of security when out near her house, as she was afraid to run into him." (Id. ¶ 29). Doe further alleges that the Board exhibited reckless indifference to the harassment, having "actual and constructive knowledge of the hostile work environment" to which Doe was subjected. (Id. ¶¶ 50, 56). Doe alleges that the Board failed to take reasonable action to stop Murray's behavior because it "knew about Mr. Murray's inappropriate behavior with Plaintiff and others" in February of 2023 and merely instructed Murray to "keep his distance" from another coworker, which Murray disregarded. (Id. ¶ 30). On April 27, 2023, Doe expressly reported the sexual harassment to an assistant administrator leading DCI to conduct its investigation. (Id. ¶¶ 32, 35–38).

The Board argues that once it knew of the alleged harassment, it "acted promptly to investigate the allegation of harassment after Plaintiff reported it." (Def.'s Mem. Supp.

Mot. Dismiss ["Mot."] at 6, ECF No. 12).[3] To the extent Doe relies on the principal's knowledge of Murray's inappropriate behavior toward another coworker, the Board argues that the allegation is "insufficient to place the Board on notice that Mr. Murray would sexually harass the Plaintiff." (Id.). To argue it was not on notice of Murray's behavior, the Board relies on Howard v. Winter, where the Fourth Circuit affirmed summary judgment in favor of an employer where the employee claimed a coworker "often spoke to her in a sexually provocative manner and fondled her breasts, backside, and face." 446 F.3d 559, 562, 571 (4th Cir. 2006). The Howard court held that the plaintiff's employer was not "on notice" of the alleged sexual harassment when the employer knew that the alleged harasser had previously used inappropriate language and displayed inappropriate photographs because the conduct involved "isolated past uses of inappropriate language and displays of lewd images." Id. at 568–69. The court held that "a factfinder may not—without more—find that an employer had notice of the type of specific harassment alleged here based solely on the alleged harasser's isolated past uses of inappropriate language and displays of lewd images." Id. at 569.

Here, Doe does not allege "isolated" or sporadic conduct that should have given notice to her supervisors that Murray was a sexual harasser. Id. at 568. Rather, Doe states that "[a]s early as February of 2023, Plaintiff's supervisors knew about Mr. Murray's inappropriate behavior with Plaintiff and others" and that the principal "had previously

---

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

instructed Mr. Murray to keep his distance from another Paraeducator." (Compl. ¶ 30.). It is true that Doe does not explain why Murray was instructed to "keep his distance" from a coworker, but the Court, viewing the allegation in a light most favorable to Doe, can reasonably infer that Murray's past behavior also involved "the type of specific harassment alleged here." Howard, 446 F.3d at 569. Doe also alleges that Murray, on at least one occasion, did not keep his distance from the other paraeducator and the administration continued to fail to take any action "despite being aware of his behavior." (Compl. ¶¶ 30–31). These allegations adequately accuse the Board of knowing about the harassment and "fail[ing] to take action reasonably calculated to stop it." Bazemore, 957 F.3d at 203.

Viewing the facts set forth above in the light most favorable to Doe, her hostile work environment claims plead sufficient facts to plausibly allege that the Board "knew, or should have known, about the harassment," and that it "failed to take action reasonably calculated to stop it." Id. at 201. Murray's conduct is imputable to the Board and the Court can infer that the Board was negligent in response to Murray's conduct. As this is the only basis for the Board's Motion, the Court will deny the Motion as to Counts I and II.

### 2. Title VII and FEPA Retaliation

Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices. See 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must allege "(1) that she engaged in a protected activity . . . (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto, 786 F.3d at 281 (quoting E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405–

406 (4th Cir. 2005)). An adverse employment action is a discriminatory act that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (cleaned up). The plaintiff must allege that the employer's conduct was such that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The adverse action "need not affect the terms and conditions of employment," Barnes v. Charles Cnty. Pub. Schs., 747 F.App'x 115, 119 (4th Cir. 2018) (per curiam), but the conduct must impose "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (quoting Adams v. Anne Arundel Cnty. Pub. Schs., 789 F.3d 422, 431 (4th Cir. 2015)).

In support of her retaliation claims under Counts III and IV, Doe alleges that the Board retaliated against her by conducting a "sham investigation" and by failing to remove Murray from his position at the school or otherwise discipline him. (Compl. ¶¶ 61, 67). Doe states that the Board did so in such a manner to dissuade a reasonable person from filing such a complaint, (id. ¶¶ 60, 66), and because she felt that she could not safely return to school with Murray, "she was forced to accept" a less desirable assignment at another school, (id. ¶¶ 39–40).

### a. Adverse Action

The Board argues that (1) the Board did not subject Doe to adverse action, and (2) any adverse action was not causally connected to her complaint of sexual harassment. (Mot. at 8–9). As to the adverse action, the Board paints Doe's decision to leave her position and take a less desirable one as a "unilateral decision" that is insufficient to allege an adverse action attributable to the Board. (Id. at 10). Doe responds that she has alleged an adverse action in the form of a "constructive transfer" to a less desirable job because her work environment was so intolerable and the Board "refused to protect her from the severe and ongoing sexual harassment." (Pl.'s Mem. L. Opp'n Def.'s Mot. Dismiss ["Opp'n] at 9–10, ECF No. 14).

The Court agrees with Doe. While the Fourth Circuit has not yet recognized the legal theory of "constructive transfer" or "constructive-demotion," Laird v. Fairfax County counsels in favor of finding an adverse action based on the facts alleged here. 978 F.3d 887 (4th Cir. 2020). In Laird, the plaintiff claimed she was transferred to another department in retaliation for filing a complaint with the EEOC for discrimination on the basis of her disability. Id. at 890.[4] She asserted that she was "effectively demoted because of her disability and because she pursued a complaint of disability discrimination." Id. at 894. The Court held that such a claim "fails for a simple reason: If an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action." Id.

---

[4] The Court explained that "we treat the Title VII context as being 'analogous' to the ADA" for purposes of "determining whether there is an adverse action for Title VII's antiretaliation provision." Laird, 978 F.3d at 893 n.5.

Importantly, on appeal, Laird had abandoned her "constructive-demotion" theory of adverse action. Id. at 894 n.7. The Court noted that "the Fourth Circuit has yet to decide whether a claim of constructive demotion is cognizable under the ADA [or Title VII]," id., and did not consider the issue since Laird had voluntarily sought and negotiated her transfer as a reasonable accommodation to her disability. Id. at 894–95. In a concurring opinion, Judge Wynn explained that he joined the majority "[b]ecause Laird clearly and unambiguously abandoned her constructive demotion claim on appeal." Id. at 895 (Wynn, J., concurring). Judge Wynn explained that "a request for a transfer is not 'voluntary' if an employee is subject to work conditions sufficiently intolerable to force them to seek a transfer. Put more directly, a transfer is not voluntary if the employee was constructively demoted." Id. (emphasis in original). Because the Fourth Circuit has "previously held that demotion may cause a constructive discharge," id. at 896 (citing Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)), constructive demotion should be reviewed under the same analysis as constructive discharge, id. (citing Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006)).

To allege a constructive discharge, "a plaintiff must show 'that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (quoting Green v. Brennan, 578 U.S. 547, 555 (2016)). The conditions must go "beyond 'ordinary' discrimination." Id. (quoting Penn. State Police v. Suders, 542 U.S. 129, 147 (2004)). Courts evaluating constructive discharge claims must consider whether a plaintiff's workplace was so intolerable that she

12

was compelled to resign under an objective, "reasonable person" standard. Heiko, 434 F.3d at 262 (citing Williams v. Giant Food Inc., 370 F.3d 423 (4th Cir. 2004)). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Id. (quoting James, 368 F.3d at 378). "In assessing intolerability, the frequency of the conditions at issue is important." Evans, 936 F.3d at 193 (citation omitted). Thus, "[t]he more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." Id. Finally, the Fourth Circuit has advised that courts should consider "the totality of the circumstances" in determining whether a resignation was, in fact, a constructive discharge. See Bodkin v. Town of Strasburg, 386 F.App'x 411, 413 (4th Cir. 2010).

     Adapting this standard in the context of Doe's alleged forced transfer to a less desirable position, the Court finds that Doe has adequately pleaded an adverse employment action. Doe has alleged facts that show Murray's behavior was continuous and intolerable. She expressly pleaded that she was "forced to accept" the less desirable assignment to avoid working alongside her alleged harasser. (Compl. ¶ 40). The Court finds that this is sufficient to allege constructive demotion as an adverse employment action.

     **b. <u>Causation</u>**

     The Court also finds that Doe has alleged facts to show that the adverse action was causally connected to her complaint of sexual harassment. "To satisfy the [causation] element, the employer must have taken the adverse employment action <u>because</u> the plaintiff

13

engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). At the motion to dismiss stage, a plaintiff can "show that the adverse act bears sufficient temporal proximity to the protected activity," or plead "facts that suggest that the adverse action occurred because of the protected activity." Laurent-Workman v. Wormuth, 54 F.4th 201, 218–19 (4th Cir. 2022) (quoting Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021)).

The relevant timeline for sufficient temporal proximity is as follows: Doe alleges that she reported Murray's harassment on April 27, 2023 and then filed a formal complaint with her principal on April 28, 2023. (Compl. ¶¶ 32–33). Doe alleges that DCI conducted a "sham investigation" of her complaint, (id. ¶¶ 42, 61, 67), and on June 12, 2023, Doe was informed that "DCI found no evidence of sexual harassment, and that Mr. Murray would not be removed." (Id. ¶ 38). Because she felt that she could not safely return to school with Murray, "she was forced to accept an assignment" in a position that started on August 16, 2023. (Id. ¶¶ 39–40).

The Board contends that four months (from the date she first reported her harassment to the date she started at her new position) is outside the temporal proximity to support an inference of retaliation. (Mot. at 11). Plaintiff points to the temporal proximity between her complaint (April 27) and her being informed that Murray would not be removed (June 12), which was the event that triggered her transfer. (Opp'n at 11). "Although there is no bright-line rule for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap "between [] notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the

14

inference of causation between the two events." Laurent-Workman, 54 F.4th at 219 (quoting King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (quotation marks omitted). Therefore, the Court should look to other facts to draw an inference that the adverse action occurred because of Doe's protected activity. Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000))).

Here, less than four months passed between Plaintiff's protected activity on April 27, 2023, and her acceptance of a new position on August 16, 2023. Arguably, the intervening summer holiday could be a factor in assessing whether the lapse in time qualifies as an adequate temporal link. But Doe points to the additional events during that time period, which viewing in the light most favorable to Doe, could be due to retaliatory animus. These include: (1) failing to conduct a proper investigation into her complaint, (2) failing to inform Doe of updates on her complaint despite her requests for information, and (3) failing to take any action, "such as removing Mr. Murray from his position," to protect her. (Opp'n at 12).

"[E]stablishing a 'causal relationship' at the prima facie stage is not an onerous burden," Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018), and "very little evidence of a causal connection is required," Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021). At this stage, Doe's allegations are sufficient. Accordingly, the Court denies the Motion as to Counts III and IV.

### c. Punitive Damages

The Court will dismiss Doe's claim for punitive damages. Doe concedes that punitive damages are unavailable because under Maryland Code, § 20-1013(e) of the State Government Article, she may only recover punitive damages "if the respondent is not a government unit or political subdivision" and when the court finds "that the respondent has engaged in or is engaging in an unlawful employment practice with malice." (Opp'n at 12 n.3). The Board is a state agency. See Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 973 A.2d 233, 236 (Md. 2009) ("We have long considered county school boards to be State agencies rather than independent, local bodies."); James v. Frederick Cnty. Pub. Schs., 441 F.Supp.2d 755, 760 (D. Md. 2006) (dismissing with prejudice a § 1983 claim against Frederick County Board of Education because "county boards of education of Maryland are state agencies"). The Court will grant the motion as to punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Board's Motion to Dismiss for Failure to State a Claim (ECF No. 11). A separate order follows. Entered this 30th day of May, 2025

/s/
George L. Russell, III
Chief United States District Judge